IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JADE CARTER, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | NO. 10-4479 |
| | : | |
| BIOMAT USA, | : | |
|     Defendant. | : | |

<u>M E M O R A N D U M</u>

**STENGEL, J.**                                                                February 23, 2012

This is an employment discrimination case in which Jade Carter alleges that her former employer, Biomat USA, Inc., unlawfully discriminated and retaliated against her because of her race, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, and unlawfully harassed and retaliated against her because of her sex, in violation of the Civil Rights Act of 1964 and other applicable law.  Biomat filed a motion for summary judgment on August 30, 2011.  The plaintiff failed to respond to the motion within 21 days, as required under Local Rule of Civil Procedure 7.1(c).  The plaintiff did not file a motion for an extension of time.  Nonetheless, I issued an Order on January 4, 2012, allowing the plaintiff to respond to the defendant's motion by January 25, 2012.[1]  Plaintiff did not file a response to the defendant's motion.

Federal Rule of Civil Procedure 56(e)(2) allows me to consider the defendant's statement of uncontested facts undisputed because the plaintiff failed to properly address

---

[1] I do not play fast and loose with deadlines in my Court.  Normally, I am not inclined to allow a party who fails to file a response to a motion for summary judgment additional time when the party does not request an extension of time from the Court.  However, in this case, the plaintiff is *pro se*.  <u>See</u> Doc. No. 25 (Order granting plaintiff's attorneys' request to withdraw as counsel because they could not simultaneously represent the plaintiff and conform to the Rules of Professional Responsibility.)

1

the defendant's assertions of fact as required by Rule 56(c). Nevertheless, I carefully examined the record in this case, including the exhibits attached to the defendant's motion for summary judgment. The defendant attached only the portions of the plaintiff's deposition that it cited in support of its motion. I asked the defendant to submit the entire deposition of the plaintiff, and the defendant subsequently filed that deposition. (Doc. No. 32.) I carefully read the transcript of the plaintiff's deposition. For the reasons set forth below, I will grant the defendant's uncontested motion for summary judgment in its entirety.

I.   BACKGROUND[2]

Carter applied for a position with Biomat on October 30, 2007. (Doc. No. 28[3], ¶ 2.) The same day, Biomat offered plaintiff a position as a Phlebotomist in Biomat's facility in Reading, Pennsylvania. (Id.) Carter accepted Biomat's offer, the terms of which are memorialized in her offer letter:

> [Biomat is] an "at-will" employer and operate[s] under the provision that employees have the right to resign their position at any time, with or without notice, and with or without cause. We, the employer, have the same right to terminate the employment relationship at any time, with or without notice, and with or without cause.

(Id.) Phlebotomists are responsible for, among other things, "stick[ing] [donors] with a needle and start[ing] the process" of plasmapheresis. (Id. at ¶ 3.) Carter was later

---

[2] Under Rule 56 of the Federal Rules of Civil Procedure, I must draw "all justifiable inferences" in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

[3] Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment.

transferred to the position of Plasma Processor where she "work[ed] in the lab" to "process[] the plasma."  (Id.)  Carter earned $9.00 per hour and reported to Corey Stein, then Facility Manager.  (Id. at ¶ 4.)

On her first day of work, Carter received the documents listed in her New Hire Packet Checklist, including Biomat's "Policy Against Harassment" which provides employees with various channels through which they can raise concerns.  (Id. at ¶ 5.)  Carter read and signed the policy.  (Id.)  Carter also received Biomat's Handbook including the Workplace Violence Policy, which provides:

> Biomat USA, Inc. has a zero tolerance for violent acts or threats of violence against our employees . . . We cannot tolerate fighting, threatening words or conduct . . . No employee should commit or threaten any violent act against a co-worker, applicant, client, or vendor.

(Id. at ¶ 6.)

Carter received several warnings from her employer for various behaviors beginning in June 2008.  (Id. at ¶ 7.)  She received warnings for using her cell phone in the workplace, failing to follow established protocol respecting the handling of donated blood plasma, poor attendance, arriving late to work, and leaving work early.  (Id. at ¶¶ 7-11.)  Each of these behaviors were against established Company protocol and policy.  (Id.)

On June 26, 2009, Carter spoke with other Biomat employees about Jodie Amato's personal life.  (Id. at ¶ 12.)  Amato was her then best friend and fellow Biomat employee.  (Id.)  Specifically, Carter told her co-workers that Amato was "sleeping with donors" and then showed her co-workers photographs of those donors with whom she believed Amato

3

had sexual relations.  (Id. at ¶ 13.)  Later that day, Carter confronted Amato because "she was being a b*tch" and "had an attitude all day."  (Id.)  Amato responded by accusing Carter of spreading rumors.  (Id.)  Carter replied that she would not "have been talking about [Amato] . . . if [Amato] wasn't such a whore."  (Id.)  They continued their argument during work hours in the presence of co-workers.  (Id.)

Carter then stormed outside after her verbal argument with Amato.  (Id. at ¶ 14.)  While she was describing the confrontation to two co-workers, Tabitha Shar and Tandy Smith, Amato also went outside.  (Id. at ¶¶ 14-15.)  Both remained on Biomat's premises. (Id.)  While Carter was conferring with Shar and Smith, Amato "pushed" Carter out of the way to proceed around her.  (Id. at ¶ 15.)  Carter was offended and more arguing ensued.  (Id.)

The dispute escalated quickly.  (Id. at ¶ 16.)  Carter pulled Amato's hair and punched her in the face.  (Id.)  Amato fought back.  (Id.)  During the chaos, Shar and Smith repeatedly shouted warnings to plaintiff and Amato to stop or they would be fired. (Id.)  The fight ended when the police arrived.  (Id.)  Carter was arrested and taken away by the police.  (Id. at ¶ 17-18.)  Prior to the altercation, Carter "knew fighting was a terminable offense."  (Id. at ¶ 17.)

After Carter was released by the police, she called Biomat's facility to inquire about her job status.  (Id. at ¶ 19.)  Steven Kline, then a manager at the facility, told her that her employment had been terminated "because of the fight[.]"  (Id.)  Carter "never had any difficulties with Kline" and has no "reason to believe he harbors any bias against [her]."  (Id. at ¶ 20.)  Carter later learned that Amato, who is Caucasian, had likewise

4

been terminated for her violation of the workplace violence policy. (Id. at ¶ 21.) Carter acknowledges that she was terminated only because of her physical altercation with Amato on Biomat's premises in violation of Company policy. (Id. at ¶ 22.) Plaintiff testified:

> Q: Now, Biomat terminated your employment June 26th, 2009. Correct?
>
> A: Yes.
>
> Q: And you claim they fired you because of you and Ms. Amato being engaged in a physical altercation on the premises. Right?
>
> A: Correct.
>
> Q: And that's why you were fired. Correct?
>
> A: Correct
>
> Q: And then the two of you had a fight, a physical fight. Correct?
>
> A: Yes.
>
> Q: And after that day -- and the two of you were fired as a result. Right?
>
> A: Right.

(Id. at ¶ 22.) (Pl. Tr. 157:18 to 158:21.)

Carter further testified that, contrary to the claims actually alleged in her Complaint, she "didn't allege that [she] was discriminated against because of [her] race." (Id. at ¶ 23.) Additionally, Carter explained that she could not recall a single sexual comment in support of her hostile environment claim. (Id. at ¶ 24.) She testified:

> Q: You also contend you were sexually harassed. What do you base that claim on?

5

> A: All the sexual comments that were said.
>
> Q: Anything else?
>
> A: No.
>
> Q: So you claim you were sexually harassed based on sexual comments. Right?
>
> A: Right.
>
> Q: What sexual comments are you referring to to support your claim that you were sexually harassed?
>
> A: I don't remember specifically.
>
> Q: Do you remember any?
>
> A: No.

(Pl. Tr. 197:25 to 198:16.)

Carter testified that she never made a complaint of sexual harassment to anyone in human resources or to anyone in management. (Id. at ¶ 25.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

A party moving for summary judgment bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.  FED. R. CIV. P. 56(c).  Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

Under Rule 56 of the Federal Rules of Civil Procedure, the Court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255.  The Court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252.  The nonmoving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather, must present clear evidence from which a jury can reasonably find in its favor. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999).  Finally, in reviewing a motion for summary judgment, the Court does not make credibility

determinations and must view facts and inferences in the light most favorable to the party opposing the motion.  Siegel Transfer v. Carrier Express, 54 F.3d 1125, 1127 (3d. Cir. 1995).

### III.   DISCUSSION

#### A.   Biomat Did Not Terminate Carter Because of Her Race

Carter admits that Biomat terminated her only after, and because of, her physical altercation on Biomat's premises with a Caucasian co-worker, who was also terminated. To prevail on a claim for racial discrimination, a plaintiff must satisfy the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  First, the Plaintiff must establish a *prima facie* case of unlawful discrimination by offering evidence "adequate to create an inference that an employment decision was based on discriminatory criterion illegal under [Title VII]."  Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 (1977).  To meet her initial burden, the plaintiff must show: (1) she is a member of a protected class; (2)  she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to the unlawful discrimination.  See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999).

Second, if the plaintiff successfully establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse action.  McDonnell Douglas Corp., 411 U.S. at 802-03.  If the defendant successfully states a legitimate, non-discriminatory reason for the adverse employment

8

action, the burden of production shifts back to the plaintiff who must show by a preponderance of the evidence that the employer's proffered explanation is a pretext for discriminatory action. Id. at 804-05.

### 1. Plaintiff Did Not Meet Her Initial Burden of Establishing a *Prima Facie* Case of Unlawful Race Discrimination.

Carter has not met her burden by offering evidence adequate to create an inference that Biomat's decision to fire her was based on illegal discriminatory criterion. The central focus of the *prima facie* inquiry is whether an employer treats some people less favorably than others because of their race. See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003). To satisfy this burden, the plaintiff must "establish some causal nexus between [her] membership in a protected class and [an adverse employment action]." Id.

Here, Carter provides nothing but conclusory statements and conjecture that Biomat was motivated by racial discrimination. Carter has come forward with no facts in support of the allegations in her Complaint and there is no evidence on record of a causal connection between Carter's participation in a protected activity and Biomat's decision to fire her. The record does not support the theory in plaintiff's complaint that her race, rather than her physical altercation with another employee, caused her termination. Instead, the undisputed factual evidence shows that Carter was terminated for her involvement in a physical altercation on Biomat's premises, during work hours, in front of co-workers, and causing the police to respond to the incident. Biomat terminated Amato, the only other party involved in the incident. Amato is Caucasian. In her

deposition, Carter testified that she was fired because of her physical altercation with Amato. Given the undisputed record before me, and Carter's failure to come forward with disputed material facts in support of her claim, I have no choice but to conclude that her claim for race discrimination fails as a matter of law.

### 2. Defendant Terminated Plaintiff for a Legitimate, Non-Discriminatory Reason.

Even if Carter had met her *prima facie* burden and established a causal nexus between her membership in a protected class and Biomat's decision to fire her, Biomat's decision to fire her for her involvement in a physical altercation with another employee was legitimate, non-discriminatory, and was not a pretext for deliberate, invidious race discrimination. The factual record before me shows, indisputably, that Carter was terminated pursuant to Biomat's documented company workplace violence policy. Biomat's termination of both employees involved in a physical altercation on its premises pursuant to its policy is a legitimate, non-discriminatory reason, especially in light of the fact that Amato, who is Caucasian, was also terminated.

Therefore, Carter must establish that this legitimate, non-discriminatory reason was simply a pretext for invidious, deliberate discrimination. She "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Fuentes v. Perskie, 32 F.3d 759, 764-65 (3d Cir. 1994) (internal citations omitted). Carter has not offered a scintilla of evidence

to support her claim.  In fact, she actually confirmed at her deposition that Biomat's reason was legitimate and non-discriminatory when she testified:

> Q: Now, Biomat terminated your employment June 26th, 2009. Correct?
>
> A: Yes.
>
> Q: And you claim they fired you because of you and Ms. Amato being engaged in a physical altercation on the premises. Right?
>
> A: Correct.
>
> Q: And that's why you were fired.  Correct?
>
> A: Correct
>
> Q: And then the two of you had a fight, a physical fight.  Correct?
>
> A: Yes.
>
> Q: And after that day -- and the two of you were fired as a result. Right?
>
> A: Right.

(Pl. Tr. 157:18 to 158:21.)

In addition to this admission, Carter was aware that fighting on the premises was a terminable offense and she does not know of any Biomat employee who was not terminated for doing the same.  Therefore, even if Carter had met her burden of establishing a *prima facie* case, which she did not, Carter fails to establish that the legitimate, nondiscriminatory reason for her firing was a pretext for unlawful, invidious discrimination.  Accordingly, summary judgment must be granted in favor of Biomat on plaintiff's race discrimination claim.

11

### B. Biomat Did Not Subject Carter to a Hostile Work Environment

Carter, by her own unsupported admission, did not establish that the alleged incidents of sexual harassment were severe or pervasive or that these incidents detrimentally affected her. To prevail on her sexual harassment claim under a hostile work environment theory, a plaintiff must establish the following five elements: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive or severe; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) respondeat superior liability existed. Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007). Carter fails to meet the second and fourth elements to establish her sexual harassment claim.

#### 1. Plaintiff Failed to Establish That The Alleged Discriminatory Comments Were "Severe or Pervasive."

Carter cannot establish that the verbal comments underlying her hostile work environment claim are severe or pervasive because she cannot remember the comments. In order to satisfy the second prong of a hostile work environment claim, the plaintiff must establish that the harassment is so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive environment. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986). In considering whether a workplace is hostile, the Court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's

work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).  Isolated or sporadic incidents, unless extremely serious, and offhand comments are not sufficient to sustain a hostile work environment claim.  Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005).

    Here, Carter's hostile work environment claim is predicated solely upon "sexual comments" which she cannot "remember."  At her deposition, Carter testified:

> Q:    So you claim you were sexually harassed based on sexual comments. Right?
>
> A:    Right.
>
> Q:    What sexual comments are you referring to to support your claim that you were sexually harassed?
>
> A:    I don't remember specifically.
>
> Q:    Do you remember any?
>
> A:    No.

(Pl. Tr. 197:25 to 198:16.)

    Carter cannot show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [were] sufficiently severe or pervasive to alter the conditions of [her] employment." Carattini v. Woods Servs., 2010 U.S. Dist. LEXIS 10073, *11 (E.D. Pa. Feb 4, 2010).  Carter's claim is based solely on verbal comments made to her at work; however, she cannot meet her burden because she cannot remember any of the comments.  Carter cannot establish that the comments were "severe or pervasive" because she cannot remember them and there is no other evidence on record about the substance of the comments.  Accordingly, she has failed to establish the second

element of her hostile work environment claim.

### 2. Plaintiff Failed to Establish That She Was Detrimentally Affected by The Comments

Carter's claim also fails because she was not detrimentally affected by the alleged unknown comments underpinning her claim for sexual harassment. In order to establish the fourth prong of her hostile work environment claim, Carter must show that she was, personally and subjectively, "detrimentally affected by the discrimination." Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006). Here, Carter acknowledges that she routinely participated in gossip in the workplace, including orchestrating rumors about the sex life of her co-worker Amato. Carter never complained to anyone at Biomat about any inappropriate statements. There are no facts on record that establish her purported detrimental effect caused by the alleged harassing statements. It strains credulity for Carter to allege that comments that she never complained about, but admittedly participated in, and has since forgotten, somehow greatly affected her such that they are actionable under the stringent standards for hostile work environment claims. Accordingly, Carter has not come forth with any evidence in support of the fourth element of her hostile work environment claim and summary judgment must be granted in favor of Biomat.

### C. Biomat Did Not Retaliate Against Carter

Carter has not established any evidence remotely demonstrating that she engaged in a protected activity of any kind or that there was a causal link between some protected

activity and Carter's termination.  Title VII makes it unlawful for an employer to discriminate against any employee "because [the employee] has opposed any practice made an unlawful practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  In order to establish a Title VII retaliation claim, an employee must prove that: (1) she engaged in protected activity; (2) her employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link between the adverse action and the protected activity.  Andreoli, 482 F.3d at 649.

     Here, Carter's Complaint alleges only a generic, catch-all retaliation claim apparently based upon a refusal to engage in sexual acts with her supervisors which led to her discipline and termination for "pretextual reasons."  However, at her deposition, Carter alleged an entirely new basis for her retaliation claim when she claimed she was unlawfully retaliated against because "they were going to pass [her] over for lead positions and give them to Jodi."  (Pl. Tr. 194:19 to 197:24.)  The undisputed record before me establishes that Biomat never altered the terms of Carter's employment, Biomat never reduced her pay or benefits, and Carter never experienced any other adverse employment action.   Carter confirms Biomat's legitimate reasons for each and every warning she received and admits that Biomat terminated her pursuant to its "zero tolerance" Workplace Violence Policy - not because of any supposed unlawful animus.  Carter never engaged in any purported protected activity; to the contrary, she concedes that she never complained to anyone at Biomat.  Accordingly, Carter fails to establish an

15

issue of disputed material fact with regard to her retaliation claim and summary judgment will be granted in favor of Biomat.

## IV.     CONCLUSION

For the foregoing reasons, I will grant the defendant's uncontested motion for summary judgment in its entirety.

An appropriate Order follows.